This is Gilbert A. Kornfield for the IBEW, the appellate. The posture of this case before the Court of Appeals I think can be succinctly stated. The undisputed facts in the record before you are that an employer, under the National Labor Relations Act, unilaterally abrogated a collective bargaining agreement during the term of that agreement, and in so doing followed a secretive and deliberate program to avoid and mislead the bargaining representative, Local 21 IBEW, of the action to abrogate the contract. The employer also, once information was provided to the union, refused to bargain over the decision to abrogate and the effects of the abrogation. Are you saying the nondisclosure of the timing of the merger was a violation of the Act? Oh, yes, because it's fundamental in terms of the obligation of good faith bargaining. In order to have good faith bargaining, the bargaining representative, where possible, must be given advance notice of the employer's intention so that bargaining can take place. Does that matter in light of the finding by the board that the merger was a core business decision? The board determined, citing first national U.S. Supreme Court decision, per se, that the merger, that is, the removal of employees from coverage under the collective bargaining agreement, was governed by first national. But the NLRB did not, the majority of the NLRB, did not state that under first national, the issue of bargaining over the decision must be weighed. That is, there's no question that the decision has an adverse effect upon the working conditions and union representation. That must be weighed against the employer's decision. There's nothing in the record to show that the employer was obligated by circumstances beyond their control or business interests to abrogate the contract midterm. And I might point out, Your Honor, that the employer in this case had significant majority control of the AG joint venture at the time that this contract was negotiated. In other words, the employer was both a negotiator and unilateral abrogator of the contract midterm. There is, as far as I am aware, no precedent by the NLRB for holding that that's not a per se, for holding that this is per se within the employer's prerogative. Because there's no evidence that the employer was obligated to abrogate the contract midterm. The fact that the employer would select supervision to govern, to supervise the members of the bargaining union would be simply an employer determination. There was no requirement that the hours, wages and working conditions, pardon me, and union representation provided by the contract be abrogated as at that time. The employer could have waited to the regular negotiating period, which would be in 2004, to bargain with you. But you're contesting the conclusion by the board, aren't you, about the business purpose of the merger. And is your argument that they clearly erred because there's insufficient evidence to support their conclusion that the merger was based on a proper business purpose? There was no evidence in the record because the record before the AOJ was solely geared to both the AG and Lucent's contention that they were not a single employer. I thought there were witnesses from Lucent that testified in the course of, what, a five- or seven-day hearing that indicated that this did have a legitimate business purpose. It was parenthetically stated by an executive of Lucent that the motivation for abrogating the contract was not to reduce labor costs. That's all that was said. Why doesn't that meet the substantial evidence standard that we have at Court of Appeal? Because that's a word. Pardon me? I'm sorry, Your Honor. That's a word. It's a meaningless word. The fact of the matter is they abrogated the contract. It had a direct effect on hours, wages, and working conditions. And from Lucent's point of view, from their interests, they had an interest in abrogating the contract. Obviously, from their point of view, it was more expedient for them not to have that contract in place. Now, an executive can say it had nothing to do with labor costs, but that's just a rhetorical statement which runs counter to the actions by the employer, which was we're going to abrogate the contract, we're going to keep it secret from the union, we're going to mislead the union, and we're also not going to negotiate over the effects. Well, the number goes up. Your Honor, before the judge ruled, I have a question for you. It seems to me the last point you made is, at least in my mind, a central point on negotiating about effects. But at least as I understood First National Maintenance, if there was a decision to close a unit or merge a unit as a core management decision, I don't think they, under that precedent, have to bargain about that decision because it's a protected core entrepreneurial decision, but they do have to bargain about its effects. I don't believe, Your Honor. Isn't that really the structure here? So the question is whether there should be a transmarine navigation remedy for not bargaining about effects. If I might, Your Honor, there are three elements here. First National Maintenance does not stand for a per se position that an employer making a business decision that affects the hours, wages, and working conditions of employees under a bargaining relationship has an unfettered right to do so. It must be weighed why the employer is making the decision at that time against the rights of bargaining. There was no weighing and no evidence with respect to that issue before the AOJ. Two, Holly Farms, the NLRB decision, is a situation where their employees are removed from coverage of the contract and merged into another organization by a successor employer. And in Holly Farms, the NLRB held that the remedy was the restoration of status quo over effects bargaining, which would amount to the same kind of remedy as in decisional bargaining. That is, the matter had to be restored as it was prior to the actions by the employer. And I might point out, Your Honor, in Holly Farms, the successor employer agreed to effects bargaining, but after they had committed the unfair labor practice. In Transmarine, the employer shut down its operation. There were no more employees. So in Transmarine, the NLRB held, well, we can't really judge what the effects are because the operation shut down. And so the NLRB held in Transmarine has the obligation to bargain after the fact, but there should be a minimum back pay award to the employees because there's no longer any operation. This situation falls within Holly Farms. The employer here didn't shut down its operation. It simply chose to abrogate the contract. Counsel, it seems to me that a number of the points that you've argued this morning are points that you win before the NLRB. The NLRB finds that this was, that it in fact was a single employer, that it was a single employer as early as February or April and certainly no later than the July letter when they gave you the notice. They found then that it was also a violation of the act for Lucent to have failed to have negotiated with you over the effect of the merger. And it seems to me that where you lose in front of the NLRB is the remedy, the Transamerica remedy. Oh, yes. What is it that you want us to do? What we are submitting is that the matter be remanded to the NLRB to follow the principles in this type of situation set forth in Holly Farms, which is the NLRB decision. We do not believe Transmarine is applicable here because the operation continued. There wasn't a shutdown situation. Now, Your Honor, I want to be candid. As I believe you are all aware, the majority of the NLRB reversed the ALJ in finding that Lucent and Agee were a single employer. That was the only issue that was litigated before the ALJ. And as a matter of fact, in our brief, we point out that when there was even discussions about the effects of the abrogation and the merger, the ALJ said, look, that's not before me. The only issue before me is single employer. If I find a single employer, then that has to await a compliance hearing. So in answer to your question, Your Honor, we're asking you to remand the matter to the NLRB and that they follow its precedents in Holly Farms, which would require unquestionably a compliance hearing. And the details in terms of the effects on the bargaining unit, losses, et cetera, of employees will have to be litigated in their compliance hearing. But didn't the Board already conclude that there were no adverse effects resulting from the merger? And that's don't we give deference to that conclusion by the Board at this point? You know, this isn't a de novo proceeding. We have a finding and you've put nothing before the Board, did you, that would challenge that conclusion? Yes. The NLRB so stated, but I might point out by the majority cavalier kind of way, because the ALJ said I don't want to hear about the effects. However, there was some evidence that came before the ALJ, the two collective bargaining units, other kinds of things. And in our brief, we detailed and the brief submitted to the NLRB, obvious kinds of adverse effects. Members of the IBW bargaining and substantial numbers were laid off by Lucent within six months after the transfer. That was in the record. In the record, if you compare the two collective bargaining agreements, the IBW members suffered substantial loss of wages because of the nature of the two collective bargaining agreements and substantial effects on their seniority because under the IBW contract, it was a nationwide unit by seniority. So layoffs would be by seniority. Under the CWA contract, layoffs are by a particular job location. So that if I have 20 years of seniority at a job location and there's three people and two others have 30 and 40 years, I'll be laid off where maybe in the same city at another location, someone with five years is still working. So you're saying that the board's finding that is clearly erroneous. Is that your argument here? Absolutely. There's nothing in the record to support it. All they said was, well, they weren't hired because they were still employed and they were under somebody else's collective bargaining contract. That's all they said. There was nothing in the record to support the board's conclusion. Thank you, Your Honors. Thank you, Mr. Garfield. May it please the Court, Dan Blitz for the NLRB. Mr. Blitz, before you get too far, would you tell us what time-sharing arrangements you have or don't have here so that we can monitor the time? Certainly. I'll be speaking for 10 minutes and counsel for Intervenor Lucent will speak for five minutes. Thank you. Virtually everything we've heard from union counsel, with all due respect, is jurisdictionally barred under 10E of the Act. The union is essentially trying to go back and relitigate this case. There's two issues in this case. There were two issues before the board, issues alleged by the general counsel. First issue, the board rationally found that the decision to integrate the unit of telephone equipment installers into the Lucent unit was part and parcel of Lucent's overall core entrepreneurial decision to integrate all of AG's operations and close AG as a stand-alone entity. For that reason, under settled precedent, First National Maintenance, there was no bargaining obligation on behalf of Lucent to bargain over the decision. Now, although there was no obligation to bargain over the decision, there was, the board found, an obligation to bargain over the effects of the decision. Having found that, the board, exercising its undisputedly broad discretion to fashion remedies that are reasonably tailored to address the facts of the case, found that a cease and desist order and a notice posting requirement were all that were required here to ameliorate the effects of the effects bargaining violation. If I understand Mr. Cornfield's argument, his argument was all of that evidence, none of that evidence got in before the ALJ because the ALJ didn't want to hear it. He only wanted to talk about single employer. Once you get to the board, the board reverses the ALJ and then proceeds to the issue that they were barred from presenting evidence to the ALJ. Thus, there was no, there wasn't a complete record before the board. With all due respect, I disagree with that. This was a voluminous record tried over several days, hundreds of pages of exhibits. The record is replete with information relating to the bargaining decision, undisputed testimony from Lucent officials addressing the reasons they wanted to integrate AG's operations. These are core entrepreneurial reasons, as I said, done to reduce redundancies, streamline operations, raise the visibility of Lucent, and sell a different type of product. The record is filled with that. What about testimony going to the effects on the workers? That's an interesting point. At the hearing, speaking toward the effects bargaining violation, I believe it was counsel for AG who was trying to introduce some evidence about post-integration layoffs. This is after. It has nothing to do with the reasons for the decision. And there were objections to that evidence by the board's general counsel and by union counsel. The administrative law judge simply put, sustain those objections. No further objection was taken to the board that the judge had erred. The union never filed a motion for reconsideration, which in this circumstance it cried out for. The types of things it's talking about, it never raised to the board, either in its exceptions to the board's decision or under a motion for reconsideration of the board's decision. If it wanted additional testimony, it could have asked the board to take that step. When you say that the arguments there are jurisdictionally barred under 10E, you're referring to the fact that these then were not exhausted before the board? They were never raised to the board. That's what that requirement is. So which arguments were not raised to the board? Among other things, the union's request to remand, as I take it, the proceeding to the board to take further evidence. On a more micro level, the union's argument about post-integration harms or the comparison of the IBEW contract to the CWA contract. It's trying to essentially now cherry-pick portions of those contracts and say that the integrated installers suffered under the CWA contract. But it never raised those to the board in its exceptions to the decision. It never raised them in a motion for reconsideration, which it never did. And I think that's why it's trying to say, well, now we want the board to go back and hear this on remand. And as I said, that overall request never raised. So we simply can't put the board in this position of having to face shifting arguments over time. You know, we have set procedures in Section 10E of the Act, states in relevant part, no objection that has not been raised before the board shall be considered by the court absent extraordinary circumstances. Those are not present here. Counsel, Judge Gould, I have a question for you, please. How do you respond to the local union's argument based on Holley Farms? First and foremost, again, like all of its arguments, that was never presented to the board. Second, you know, as I understand it, the union is now saying, well, Transmarine doesn't apply. This case called Holley Farms does. Argument was never presented. Moreover, as we discussed in our brief, Holley Farms was ‑‑ is distinguishable. In that case, among other things, there was an unlawful withdrawal of recognition, which did not occur in the present case. So we would say that that case, aside from the union's reliance on it being jurisdictionally barred, is distinguishable. And the board distinguished it, too, in its decision when it said that, in that case, unlike the present case, there was no well‑defined integration plan. So it's distinguishable. And we simply can't be put in the situation now of the union not liking the result it got, you know, wanting to go back and try to apply this under a new principle, you know, albeit a distinguishable one. So the second issue, which is the effects bargaining issue, the board was well within its discretion to find that, as I mentioned, a cease‑and‑desist remedy and notice‑posting remedy were all that were required. These telephone equipment installers who were integrated retained full pay, full benefits. Their seniority was dovetailed. There was essentially no ‑‑ there was no harm, and the board describes this in its decision, in addition to highlighting the fact that there was no contention that they suffered. Their terms and conditions of employment were worse under the CWA contract. But wasn't there some evidence they were ‑‑ some were paid less. There was vacation time was varied, and there were some layoffs. Wouldn't those count as adverse effects arising from the merger? No evidence that was presented to the board, Your Honor. No evidence along those lines. Counsel just said it was clearly erroneous for the board to fail to find adverse effects based on what he claimed was submitted to them. I can't see how that could be the case if counsel for the union wants to argue that. He should have made that case. The board cannot sit and weigh, you know, without assistance from counsel, you know, allegedly competing portions of collective bargaining agreements. We simply don't know that, you know, the union's argument is correct. All the board found was that these individuals were retained with full pay, full benefits, under a different contract. That's true, but there was not the harm, the type of harm after all, that speaks to the need for a full, what's called a full transmarine remedy, which is a remedy designed to effectuate bargaining and give back pay to discriminatees to foster that bargaining remedy. And I might point out that, you know, back pay in this case, I don't think the union mentioned it. It's not surprising. That would be a wholly punitive imposition here because, after all, these individuals were retained with full pay and full benefits. Moreover, the standard of review is significant. It's a clear abuse of discretion that the union would have to show. The board has undisputed prerogative to take into account special circumstances. It really found that in the unique circumstances of this case, a cease and desist order and a notice posting remedy were sufficient, and it acted well within the discretion in taking into account the practical facts of this case. Namely, there was a union on the scene. It did not want to upset this bargaining relationship and the effects bargaining remedy was appropriate. Summing up, the board respectfully requests that the union's petition for review be denied. The decision, the first issue the board rationally found, that there was no obligation to bargain over the decision, and the board acted well within its discretion in tailoring the transmarine remedy. Virtually all of the union's claims are jurisdictionally barred under Section 10b, and I'll yield to intervener's counsel now if there are no further questions. Thank you, counsel. May it please the Court. I am Michael McGann. I'm here representing the intervener, Lucent Technologies. I have a few brief remarks. I want to make some corrections to some of the arguments I heard. There was a comment made in opening arguments about the Local 21 contract with AGCS. There was never any kind of allegation that at the time that was negotiated in 2000, that Lucent and AGCS constituted a single employer or that they played any role in the negotiation of that contract. But I think it's, from the Court's questions, what I'd really like to focus on is the remedy portion of the board's decision here. And I think to look at that, we need to look at what was going on with Lucent and what they were trying to attain. They were merging a $250 million corporation into their operations for the purpose of attaining cost savings completely outside the bargaining unit. There's specific testimony that they didn't consider that there would be any savings in the bargaining unit because the amount of installation work would remain the same, and that nobody took into account whether there were any differences between the two collective bargaining agreements. But what they wanted to achieve was all the way up and down the company, AGCS would be fully integrated into Lucent. All of their ordering systems, their customers, their products would become Lucent. In the installer bargaining unit, they went to great pains to fully integrate those AGCS installers into the existing bargaining unit. They cross-trained them so that they could do Lucent work. They assigned them to Lucent supervisors. They cross-trained Lucent installers so that they became fully cognizant of installing the AGCS products and could work for them. In some cases, former Lucent installers worked for AGCS supervisors, and former AGCS employees worked for Lucent supervisors. They had a seamless installer bargaining unit at the end of the day. That is what distinguishes this case from Holly Farms. In Holly Farms, what remained was there was an integration, but the employees who were formally represented by the union maintained their status as an independent individual bargaining unit. Here, that didn't happen. Here, they met all the standards of accretion, and it was a fully integrated unit. So in Holly Farms, the board found that you couldn't withdraw recognition. There was a withdrawal of recognition here. Here, based on the full integration, the board specifically found that it was not a violation of the act for Lucent to withdraw recognition from Local 21 as of August 1, 2003. Now, we have to look also at Lucent's relationship with the CWA. Lucent is a spinoff of AT&T in 1996, and from that time they bargained with the CWA for the installer bargaining unit, which was ten times the size of the AGCS bargaining unit. They also, because they were a successor to AT&T, inherited a 40- or 50-year history of collective bargaining and contracts for the installer bargaining unit. If you look in the record, I think it's General Counsel 3, is a several-hundred-page collective bargaining agreement covering all aspects of work in the installer unit. This is the contract that these installers were melded under, and that's the relationship that the board was concerned about upsetting if they said, well, you have to engage in a transmarine remedy because now Local 21 is going to bargain over, and again, we go to the record, the things they were interested in bargaining were dovetailed seniority, which they described as a blockbuster issue in the conversation between Mr. DeWitt and Mr. Schechter shortly before the effect of the merger, wages, pension, geographic areas, and representation. Well, all that represents an intrusion into the relationship between Lucent and CWA that existed under a very distinct and long and involved collective bargaining agreement. Now, you add that concern on the fact that there was no harm evidenced in the record to these installers. There's more than just looking at the collective bargaining agreements. There are specific promises in the record, in the welcoming documents and letters that went from Lucent to these installers, that they would continue at their same wage rates. That is in the record. There's also in those documents a promise that if their vacation levels are higher than what they would achieve under the collective bargaining agreement with the CWA, those would be preserved. Their pension was frozen as it was under AGCS and then added to by what they earned under the CWA pension plan. With regard to seniority, it's impossible on the record here to draw a conclusion that their seniority was harmed. You would have to have on the record what each individual's seniority was. You can't just speculate just because you have a different seniority system in the two contracts that somebody wound up better or worse under that. The union objected to putting any evidence about the post-merger terms and conditions of employment into the record, and now they're trying to take advantage of that. But as counsel for the NLRB pointed out, there's a mechanism for doing that. They should have asked the board, say, hey, wait a minute, this is a change. We need to go back. They're jurisdictionally barred because they didn't do that. Finally, because the transfer was seamless, July 31st, they're employed by AGCS. August 1st, 2003, they're employed by Lucent. Nobody was out any money. They were promised a continuation of their same wages. So if you impose or the board were to impose a transmarine remedy, which has in it a back pay element running from the date the change was made, Lucent would be paying these people the same wages they already paid them for a period of time. Clearly a windfall and, again, has a punitive nature, as was raised by counsel for the board. I see I'm over my time. If the court has any questions, I'd be glad to answer them. I have one question, Judge Gould. If the union is barred jurisdictionally from asserting an issue now about different impact to the installers under the successor union, the CWA union's terms rather than local 21's, then would I be correct that if they are jurisdictionally barred, that we should not remand for more factual findings on that? That's correct, Your Honor. That would be my understanding of the law. Having failed to do that before the board previously, that they went there right jurisdictionally, so it shouldn't be sent back to the board to allow them to now raise what they've already lost. Okay. Thank you. Thank you. Mr. Kornfield, you used your time, but I'll give you one minute. There's something that we need to hear. Sure. Pages 15 and 16 of our brief cite pages 701 through 704 of the transcript showing the exchange between the consul and the AOJ, where the AOJ stated, we're not going to get into the effects of what occurred. The AOJ was only interested in the issue raised by Lucent and AG that they were not a single employer. Okay. First, a couple of questions. First of all, one comment, that doesn't tell us there wasn't anything in the record, which is what I understood from the board. The board says, well, there was plenty of record here, and the AOJ may not have been interested in it. Second thing I would like you to address is, so why didn't you move for reconsideration of the board? Why didn't you acknowledge that in your exceptions to the board's decision? On pages 14 and 15, 16 of our reply, we cite the general consul's exceptions, which were filed to the NLRB, including the general consul's request that the remedies be Holly Farms and Comar, Inc. That's on page 15 of our reply brief. I might point out also that the unfair labor practice complaint, which had been issued pursuant to a directive by the general consul, not the regional director, the general consul of the NLRB directed that the complaint be issued in this case, requested specifically the Holly Farms remedy and the answers accordingly by Lucent and AG. In addition, our brief and exceptions to the NLRB raise the whole question of the remedies. Did you raise Holly Farms? The briefs by the general consul and we address very specifically the briefs to the board, the appropriate remedies in this case. In under 10E and the Ninth Circuit decisions, including U.S. Supreme Court decisions, I might say, if I might, it would be ludicrous to hold in this case that the NLRB was not aware of the remedies sought not only by the IBW, but by the general consul of the National Labor Relations Board. Thank you. We thank all counsel for the argument. With that, the Court will stand in recess for the day.
judges: Gould, Bybee, Tymkovich